**COLLINS CONSTRUCTION COMPANY OF TEXAS, Appellant,**

v.

**Desha TAYLOR, Appellee.**

No. 4160.

Court of Civil Appeals of Texas.

Waco.

Oct. 24, 1963.

Rehearing Denied Nov. 21, 1963.

Jones, Boyd, Westbrook & Lovelace, Waco, for appellant.

Dunnam & Dunnam, Waco, for appellee.

TIREY, Justice.

Plaintiff grounded his right to recover damages to his home resulting from blasting on a highway by virtue of the fact that he was a third party beneficiary under a contract defendant had made with the State Highway Department of the State of Texas on that portion on the highway. Plaintiff went to trial on his second amended petition, and pertinent to this discussion he alleged that in December 1958 or January 1959, defendant engaged in blasting operations with high explosives in the vicinity near his home, and that such blasting operations were conducted with an excessive and greater quantity of explosives than would have been used by an ordinarily prudent person under the same or similar circumstances, and that such acts constituted negligence and proximately caused the cracking of the walls of his home, and that such cracking decreased its market value from $20,000.00 to $10,000.00 immediately thereafter. He further alleged that defendant, prior to the beginning of such construction and building operations, entered into a written contract with the State of Texas, acting through the State Highway Department, obligating itself to pay all damages caused by the operations to private property of others, and that such contract provided that it was for the benefit of all citizens of Texas, and that plaintiff, by virtue of his damages sustained, is a third party beneficiary under the terms of such contract, and that he is entitled to enforce such contractual right to payment by defendant for the damages he sustained. The provisions of the contract expressly relied upon and tendered in evidence are paragraphs 7.9, 7.10 and 7.11, and they are listed under Item 7, Legal Relations and Responsibilities to the Public, and are:

"7.9. Use of Explosives. When the use of explosives is necessary for the prosecution of the work, the Contractor shall use the utmost care not to endanger life or property. * * *

"7.10. Protection of Adjoining Property. The contractor shall take proper measures to protect the adjacent or adjoining property which might be injured by any process of construction, and, in case of any injury or damage, he shall restore at his own expense the damaged property to a condition similar or equal to that existing before such injury or damage was done, or he shall make good such injury or damage in an acceptable manner. * *

"7.11. Responsibility for Damage Claims. * * * He shall be responsible for all damage or injury to property of any character occurring during the prosecution of the work resulting from any act, omission, neglect, or misconduct on his part in the manner or method of executing the work; or from his failure to properly execute the work; or from defective work or materials. He shall not be released from such responsibility until all claims have been settled and suitable evidence to that effect furnished the Commission."

Plaintiff further alleged that he did not discover, and could not have discovered by the exercise of ordinary care, that the walls of his home were broken until July

1959, when ants started crawling through them. He prayed for appropriate relief. Defendant went to trial on its second amended answer. Pertinent to this discussion, defendant entered a general denial and further specially plead that if there were any cracks in the walls of plaintiff's home through which ants crawled that such cracks were due to plaintiff's own contributory negligence; that such was due to the defective manner in which plaintiff's house was constructed and maintained, and that if such cracks, if they existed, are due to a shift in the soil under plaintiff's home, and that this constitutes the sole cause of such condition. Defendant further averred that plaintiff's asserted action is barred by the two year statute of limitations.

The jury found in answer to issue 7 that defendant conducted its blasting operation with an excessive quantity of explosives, and in issue 8, that such blasting proximately caused the cracking of the home of the plaintiff, and in issues 9 and 10 found respectively that the market value of plaintiff's home immediately prior to the cracking was $19,000.00, and immediately after the cracking to be $10,000.00, and in the decree we find this recital:

> "and the court having found from said pleadings, evidence and verdict of the jury that the defendant at all times material herein was acting in the performance of a written contract between it and the State of Texas under the terms of which defendant contracted for the benefit of the public (including plaintiff) to use the utmost care not to endanger property when using explosives and to make good any injury or damage that he might do in the use of same, that defendant used an excessive quantity of explosives in its said blasting operation and that said blasting operation proximately caused the cracking of plaintiff's home to his damages in the sum of $9,000.00; * * *"

and decreed accordingly.

The judgment is assailed on what defendant designates as 10 points. One is to the effect that the Court erred in failing to sustain defendant's plea in bar of the two year statute of limitations, because plaintiff's petition on which he went to trial showed on its face that any cause of action based on negligence occurred more than two years prior to the commencement of the suit. Points 2, 3 and 4 raise substantially the same point. We overrule each of the foregoing points for reasons hereinafter briefly stated. First of all, the four year limitation period provided for actions founded on instruments in writing (Art. 5527, Vernon's Ann.Civ.St.Tex.) is controlling (and not the two year statute, Art. 5526) and is applicable to a written contract that is made for the benefit of third persons. See Butterworth v. Kinsey, 14 Tex. 495, 37 Tex.Jur.2d, p. 151; Davis v. Rush, Tex.Civ.App., 288 S.W. 504. We have previously stated that plaintiff pleaded the execution by defendant of a written contract with the State of Texas for the benefit of plaintiff as a third party beneficiary, and there being no verified denial of its execution it was established by Rule 93, Texas Rules of Civil Procedure, as well as by the undisputed evidence. We have previously set out each of the provisions of the contract relied on in the pleadings, and these provisions of the contract were tendered in evidence. It follows that defendant by its written contract expressly assumed a legal responsibility to the public, including plaintiff, for making good any injury or damage which it caused by negligent blasting. Our Supreme Court in the case of McCown v. Schrimpf, 21 Tex. 22, held that "where one person makes a promise to another for the benefit of a third person, that third person may maintain an action upon such promise". Our Supreme Court has not seen fit to change that rule. The foregoing rule was applied by this Court in James Stewart & Co. v. Law, Tex.Civ.App., 228 S.W.2d 601, which decision was affirmed by our Supreme Court in 149 Tex. 392, 233 S.W.2d 558, 22 A.L.R. 2d 639. See also Edds v. Mitchell, 143 Tex.

307, 184 S.W.2d 823, pt. 5, 158 A.L.R. 470, Supreme Court; Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48, Supreme Court, pt. 8, and cases cited in points 5 and 8 aforesaid. The obligations imposed upon the defendant in its contract with the state in paragraphs 7.9, 7.10 and 7.11, are clear and comprehensive. In Knox v. Ball, 144 Tex. 402, 191 S.W.2d 1', 164 A.L.R. 1453, (points 1, 2) our Supreme Court said:

> "It is the rule that a person not a party to a contract may enforce it if it appears that it was made for his benefit; * * *." Citing Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003; 12 Amer. Jur. 833, Sec. 281; 17 C.J.S. Contracts § 519, p. 1131. See also Tex. Digest Vol. 9, Contracts, 

Point 5 is to the effect that the Court erred in overruling defendant's special exceptions set out in its second amended answer to the plaintiff's allegations of a third party beneficiary contract, for the reason that such allegations were nothing more than a hold-harmless agreement on the part of the defendant by and with the State of Texas, which was not a contract to inure to the benefit of the plaintiff. It is obvious from what we have heretofore stated that we are not in accord with this view, and point 5 is overruled.

Our view with reference to such public contracts is consistent with the weight of authority in other jurisdictions. Freigy v. Gargaro Co., 223 Ind. 342, 60 N.E.2d 288; Louisville Gas & Electric Co. v. Longley & Co., 250 Ky. 324, 62 S.W.2d 1036; Coley v. Cohen, 289 N.Y. 365, 45 N.E.2d 913; Rigney v. New York Central etc. R. Co., 217 N.Y. 31, 111 N.E. 226; Smyth v. City of New York, 203 N.Y. 106, 96 N.E. 409; Bator v. Ford Motor Co., 269 Mich. 648, 257 N.W. 906; Keefer v. Lombardi, 376 Pa. 367, 102 A.2d 695, cert. den. 347 U.S. 1016, 74 S.Ct. 871, 98 L.Ed. 1139; City of University City ex rel. and to Use of Mackey v. Frank Miceli, etc., Mo., 347 S.W.2d 131, 134. See Am.Law Inst., Restatement, Contracts, Sec. 145.

█ Appellant's point 8 is to the effect that the Court erred in overruling defendant's motion for mistrial, because on two occasions plaintiff and his attorney deliberately injected into the case the question of insurance, for the reason that such injection into the case was harmful and prejudicial and caused the rendition of an improper verdict. While plaintiff, Taylor, was on the stand, the following occurred:

> "Q. Do you recall when some one came around to see you prior to that blasting?
>
> "A. I do.
>
> "Q. And who was that man?
>
> "A. Tandy Freeman is the only one that I know his name. And he was with Collins Construction Company.
>
> "Q. Without stating anything about him, was there another man with him?
>
> "A. There was. He said he was with the insurance company."

As we understand the record, defendant's counsel immediately asked the Court for the privilege of going into his chambers for presenting a motion for mistrial. This the Court permitted and after counsel had presented said motion he said: "I don't want to argue it," and the motion for mistrial was overruled. Counsel for plaintiff says in his brief that that part of the testimony " 'with the insurance company', was instructed out by the cautious trial court * * *." This statement in appellee's brief is not challenged, and there is no showing in the record that defendant's counsel asked the Court to instruct the jury to disregard the statement, nor that the Court voluntarily did so. Defendant's counsel in oral argument said their reason for not asking the Court to give such instruction to the jury was because they feared it would unduly "compound the error." We have made a careful examination of the record as a whole with reference to the error com-

plained of, and we do not believe the appellant has carried its burden under Rules 434 and 503 T.R.C.P. In Walker v. Texas Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298, we find this statement:

> "The rule of 'presumed prejudice' has not prevailed in this state since the adoption of Rules 434 and 503, Texas Rules of Civil Procedure, * * *." Citing Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, 600.

We think the pronouncements in the Walker case, supra, are peculiarly applicable to the factual situation here, because in the Walker case the question of insurance arose by the answer of the witness which was not responsive to the question asked. That is exactly the factual situation here. It is true that in the Walker case the Trial Court instructed the jury to disregard the voluntary statement made; to this extent the Walker case differs from the case at bar, the defendant here having asked only for a mistrial, together with the statement that defendant's counsel did not care to argue the question. In points 5 and 6 we find this statement by our Supreme Court:

> "Considering the entire record, we are not satisfied that the unresponsive statement of the witness, Parnell, probably caused the jury to return a different verdict from what it would have returned if the statement had not been made. Moreover, the jury must be presumed to have obeyed the instruction of the trial court and to have disregarded the statement of the witness."

> \* \* \*

> "This court has held that prejudice flowing from this general type of statement is removable by instruction. King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855, 856."

In the case at bar, with reference to the voluntary statement relating to insurance,

plaintiff Taylor was being interrogated concerning the conversation he had with Tandy Freeman wherein the plaintiff sought to connect Freeman as acting in the capacity as agent for Collins Construction Company. It is true that in the jury's verdict that they found that prior to the blasting Freeman told Taylor that if he would not bother said blasting operations the Collins Construction Company or its agents would come around when they completed the construction work and pay him whatever damages were caused by blasting; however, the jury also found that Freeman was not an agent of Collins Construction Company at the time that he made the statements to Taylor, and that Freeman was not acting within the scope of his authority nor in the apparent scope of his authority as agent of said company. It is true that defendant contends that there was no evidence and insufficient evidence to sustain the jury's verdict, but appellant does not contend that the jury's verdict is excessive nor that it is so against the great weight and preponderance of the evidence as to be unjust. That leads us to say that the voluntary statement regarding insurance by plaintiff did not cause the rendition of an improper judgment by influencing the jury to return a verdict it probably would not have otherwise returned, and this view is expressed from an examination of the record as a whole. See points 3 and 4. We have previously stated that the Court's judgment here is grounded on the fact that the plaintiff was a third party beneficiary under the provisions of a written contract that the State Highway Department had with Collins Construction Company, and upon the jury's answers to issues 7, 8, 9 and 10, wherein the jury found that defendant used an excessive quantity of explosives, and that such use proximately caused the cracking of Taylor's home, and that the market value of his home before the blasting was $19,000.00, and after the blasting $10,000.00, and after considering the record as a whole we are of the view that the voluntary statement regarding insurance was without

impact on any of the issues on which the judgment is grounded, and we are of the further view that if there was any prejudicial effect it could have been removed by an instruction of the trial court, under the authorities of Walker v. Tex. Employers' Ins. Ass'n., supra. See also Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806; Condra Funeral Home v. Rollin, 158 Tex. .478, 314 S.W.2d 277.

We have carefully considered the statement of facts, and think the evidence is sufficient to support the jury verdict, and the judgment of the Court rendered thereon. We have carefully considered each of appellant's other points, and it is our view that none present reversible error, and each is overruled.

Accordingly, the judgment of the Trial Court is affirmed. ·

WILSON, Justice (dissenting on rehearing).

I concur in the holding that appellee is a beneficiary under the contract in question, and that consequently his action is not barred by limitation.

I am not in accord with the holding that the erroneous injection of insurance in the trial of this case was not prejudicial, but harmless. Plaintiff admittedly did not rely for recovery on any oral promise of defendant to pay damages, in consideration of forbearance to sue, or otherwise. This, counsel for appellee conceded in argument, and the majority recognizes. Appellant first objected to the reading in evidence by appellee of the latter's deposition testimony concerning appellant's promise to pay damages and that "when we get through blasting over here and finish the job, we will be back around with an adjuster and make adjustments on your home". Thereafter, its motion for mistrial because this portion of the deposition was read over objection, was overruled. This motion and the briefs reflect the court had previously instructed that no allusion be made to insurance. The deposition testimony was further that another man accompanied appellant's foreman when the promise testified to was made. Appellee thereafter took the stand and testified concerning the conversation, the foreman was "the only one that I know his name." Then: "Q. Without stating anything about him, was there another man with him? A. There was. He said he was with the insurance company." After appellant's further motion for mistrial was overruled, appellee continued: Q. The foreman, Freeman, "and this other gentleman remained right there together during all your conversation with Freeman, didn't they? A. Yes." There was then repeated, over objection, testimony that the foreman said that if plaintiff was damaged, "we will come back and pay you for it," and "some one will come back here and make adjustments." Appellee's counsel concede on argument that liability and damages were in sharp issue during the trial, and the record so reflects.

The total effect of this evidence is that appellant was insured; that the insurer agreed to pay appellant, and failed to do so. To say that appellant failed to carry its burden under Rule 434 is an anomaly. Just how is the burden to be carried? An effort to ask jurors if this evidence affected their verdict would be to improperly probe their mental processes. Texas Employers' Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916, 920. As said in the cited case, the conclusion of probable injury must be drawn from "what was said and done". Rule 434 does not require a showing of injury beyond a reasonable doubt, and "in estimating the probability of injury, the act of overt misconduct in itself may be the most compelling factor in establishing prejudice." The burden here was met, prima facie, "by simply showing the improper act and nothing more". id., 317 S.W.2d 921. It was not necessary to show a different judgment would necessarily have resulted. Pittman v. Baladez, 158 Tex. 372, 312 S.W. 2d 210, 216. I think there is a prima facie showing of probable harm. See Dennis v. Hulse, Tex., 362 S.W.2d 308, 309.

If we are to make the matter of improper injection of insurance always a "wrist-slapping" matter in Texas, we should completely and plainly drop the barrier. If we are ever to enforce the rule, this is a case to do so.